Filed 12/3/25  P. v. Turner CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063510 |
| v. | (Super. Ct. No. 06ZF0138) |
| BRANDON MICHAEL TURNER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Larry Yellin, Judge. Affirmed.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Arlene A. Sevidal, James M. Toohey and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

Defendant Brandon Michael Turner was convicted of one count of first degree murder (Pen. Code, § 187, subd. (a))[1], one count of second degree robbery (§§ 211, 212.5, subd. (c)), and one count of transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)). The jury also found true the allegation that defendant committed the murder during a robbery (§ 190.2, subd. (a)(17)(A)) and that he discharged a firearm causing death (§ 12022.53, subd. (d)).

The court sentenced defendant to life in state prison without the possibility of parole, plus 25 years for the firearm enhancement. The court also imposed but stayed sentence on the robbery count under section 654 and imposed concurrent time for the drug offense.

In February 2019, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6).[2] The court found defendant's petition set forth a prima facie case for relief and issued an order to show cause. After an evidentiary hearing, the court denied the petition.

On appeal, defendant contends the court erred by denying his petition because there was insufficient evidence that he was a major participant in the robbery acting with reckless indifference to human life. He also asserts the court improperly discounted his youth and testimony regarding adolescent brain development.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10).

2

For the reasons below, substantial evidence supports the court's finding that defendant was a major participant who acted with reckless indifference to human life. We accordingly affirm the order.

STATEMENT OF FACTS

I.

EVIDENCE FROM THE UNDERLYING TRIAL[3]

A. *Testimony from Reuben Avery and Other Witnesses*

In February 2006, defendant, his younger brother, Stephen Bennett, and Bernard Smith were at Reuben Avery's home in Oceanside. At one point, Smith said he wanted to get drugs and asked Bennett where they could get some. Bennett then called the victim who was a drug dealer in Irvine. Defendant, his brother, Bennett, and Smith left Avery's house, but Avery refused to go with them.

Later that evening, the victim was shot and killed outside his apartment in Irvine. One witness saw a man yelling and being chased by two others. He heard the second chaser, who was a "heavyset" man, say: "'Get him. Get him. Get him.'"

According to another witness, three black men were running. The second man was shooting at the first man, and a third man was yelling and running in the same direction. The witness testified the last man running was taller than the other two men.

_____

[3] The parties note the testimony from defendant's original trial was presented in the form of an exhibit at the section 1172.6 hearing. Defendant attempted to transfer the exhibit to this court, but the trial court transmitted a different exhibit and was unable to locate the correct exhibit. On this court's own motion, the court takes judicial notice of the reporter's transcripts from defendant's original trial filed in *People v. Turner* (Oct. 23, 2009, G041035) [nonpub. opn.].) Both parties rely on the trial transcripts from the latter appeal.

3

A third witness heard gunshots and then observed three "dark skinned" men. One man was chasing another man. The chaser was "fat," changed the magazine of his gun, and continued to shoot. The man who was being chased yelled for security and fell to the ground. The witness told his wife to call the police and then observed the shooter walking away calmly with a third man whom the witness described as thinner than the shooter.

A fourth witness heard gunshots and saw a man running after another. The first man was yelling for security, and the chaser was huskier and had a silver gun. The chaser shot the first man.

A final witness testified she lived with the victim and knew he was selling drugs. She heard gunshots and then heard one person say, "'Did you pick him?'" or "'Did you hit him?'" The other person responded, "'The mother fucker was down.'" The witness went outside and found the victim on the ground.

Later that night, Avery saw defendant, defendant's brother, Bennett, and Smith at someone else's home. Avery thereafter drove defendant and his brother somewhere else. During the drive, defendant described what had happened that night. Defendant said he and Smith went to the victim's apartment, and Smith began shooting at the victim and missed. Defendant told Avery that he then chased the victim and fired nine shots himself, but he was not sure if he hit the victim.

At trial, Avery acknowledged telling police that defendant told him: "'Smitty shot him but missed and I just emptied on him. I stuck about nine in him.'" Avery testified defendant appeared to be "bragging" when he made the latter statement. Avery also testified he saw defendant in possession of a .22-caliber firearm along with cocaine, which defendant said he "got from going." Several weeks prior to the incident, Avery had seen

4

Smith with a chrome .22-caliber firearm and .38-caliber bullets with "buck shots" in them.

*B.  Police Investigation and Defendant's Admissions*

The police subsequently arrested defendant and found a stainless steel .22-caliber long rifle with the magazine missing in an area where defendant had last been seen. The police also recovered a magazine with ten .22-caliber bullets located by a citizen. A forensic pathologist later determined the .22-caliber bullets recovered during the victim's autopsy and the .22-caliber casings collected at the scene were all fired from the firearm the police had recovered in defendant's flight path. The autopsy revealed the victim suffered three wounds to the chest and back and a nonlethal wound to the calf region.

In a police interview, defendant admitted he shot a .38-caliber firearm at the victim first but believed he missed because the victim continued running. Defendant also admitted he stopped to pick up drugs the victim had dropped as defendant was chasing him. Defendant surmised that Smith must not have realized defendant picked up the drugs because Smith continued to shoot the victim. Defendant further knew there was a plan to "hit a lick," which he defined as robbing someone.

II.

DEFENDANT'S PETITION FOR RESENTENCING

In his petition for resentencing, defendant averred, among other things: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; [¶] 3. I could not now be

5

convicted of 1st or 2nd degree murder because of changes made to [sections] 188 and 189, effective January 1, 2019."

The court found defendant's petition set forth a prima facie case for relief and issued an order to show cause.

III.

EVIDENCE FROM THE SECTION 1172.6 HEARING

At the section 1172.6, subdivision (d)(3) hearing, the court considered Avery's testimony, the trial transcripts, trial exhibits, and a transcript of stipulated testimony on adolescent brain development.

*A. Avery's Testimony*

Avery testified about the 2006 incident. According to Avery, he was at his Oceanside residence with Bennett, Smith, defendant, and defendant's younger brother. Bennett and Smith arrived first, and defendant and his brother arrived later. Avery, Bennett, and Smith discussed committing a crime before defendant and his brother arrived. He also claimed he did not observe anyone with a firearm at that time. Avery then testified that Bennett, Smith, defendant, and defendant's brother left his residence.

Avery saw Bennett, Smith, and defendant a couple of hours later at another apartment. Defendant told Avery that Smith had "jumped out of the bushes and started firing [at the victim], and [defendant] followed suit and started firing." Defendant also reported that Smith gave a .22-caliber firearm and some shells to him and told him to get rid of it. "They" also gave defendant some drugs. Avery stated he had previously seen Smith with the .22-caliber firearm and believed it belonged to Smith. Sometime after the murder, Avery encountered defendant's younger brother who had a .22-caliber firearm.

6

When asked about his prior trial testimony, Avery noted he was a drug addict and did not recall specifics about his testimony. Although he previously testified at trial that defendant said he "emptied on him" and "stuck about nine in him," Avery denied this at the hearing. He also testified defendant and his brother were "kids" and that he, Smith, and Bennett were older men "putting dangerous guns in kids' hands." He described defendant as "just barely 18" at the time.

*B. Testimony Regarding Adolescent Brain Development*

The prosecution also introduced a certified transcript of Dr. Elizabeth Cauffman's testimony in another matter. Dr. Cauffman generally testified about adolescent brain development and defined different adolescent groups: early adolescence (ages 10 to 12); middle adolescence (ages 13 to 15 or 16); late adolescence (ages 16 to 19); and young adulthood or transitional age youth (ages 20 to 25). Among other things, she explained that a person's "emotional system" is not fully developed until his or her mid-20s or early 30s.

IV.

THE COURT'S ORDER DENYING DEFENDANT'S PETITION

The court ultimately denied defendant's petition for resentencing. Although Avery's testimony at the evidentiary hearing differed from his testimony at trial, the court found his trial testimony was more reliable. The court also found Dr. Cauffman's testimony credible but noted her testimony did not undermine defendant's role or his ability to understand and participate in the crime.

The court then explained defendant would be guilty beyond a reasonable doubt of first degree murder under current law. According to the court, defendant was a major participant who acted with reckless indifference

7

to human life. The court relied on the following facts. First, defendant admitted to knowing that he was going to commit a robbery and went with Smith to meet the victim. Defendant also knew he and Smith were both armed with firearms. Second, once they arrived, defendant and Smith exited the vehicle to confront and rob the victim. Defendant fired his firearm at the victim while chasing the victim. Smith also pursued and fired his firearm. Defendant further admitted he took the victim's drugs as they fell during the chase. Defendant did not try to stop Smith from shooting after defendant had already taken the drugs. Finally, witnesses observed both men walking away calmly after Smith fired at the victim while he was on the ground. They left together, and defendant kept Smith's firearm as well as some of the drugs for his role in the enterprise.

For the same reasons above, the court held the evidence also showed defendant is guilty of implied malice murder. Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues the court erred by denying his petition because the evidence was insufficient to prove he was a major participant in the robbery who acted with reckless indifference to human life. He also contends the court did not adequately consider his youth in determining whether he acted with reckless indifference to human life. We are not persuaded.

### I.

#### APPLICABLE LAW AND STANDARD OF REVIEW

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the

8

intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) Relief under section 1172.6 is accordingly restricted to those convicted of murder "under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1172.6, subd. (a)(1).)

The burden of proof is on the prosecution to prove beyond a reasonable doubt the defendant is ineligible for resentencing. (§ 1172.6, subd. (d)(3).) To determine if a trial court properly denied a section 1172.6 petition after an evidentiary hearing, we review the factual findings for substantial evidence. (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.) "We view the facts in the light most favorable to the People. In this process, we presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence, whether direct or circumstantial. [Citations.] We must accept factual inferences in favor of the trial court's ruling." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 591.)

## II.

### SUFFICIENCY OF THE EVIDENCE

A major participant in a robbery is someone whose "personal involvement [is] substantial, greater than the actions of an ordinary aider and abettor." (*People v. Banks* (2015) 61 Cal.4th 788, 802.) Factors bearing on the major participation requirement include the defendant's (1) role in planning the crime that led to one or more deaths; (2) role in supplying or using lethal weapons; (3) awareness of the particular dangers created by the nature of the crime, the weapons used, or the other participants; (4) presence at the scene, including whether he could have facilitated or prevented the

murder, and whether his actions played a role in the murder; and (5) actions after lethal force was used. (*Id.* at p. 803.) "No one of these considerations is necessary, nor is any of them necessarily sufficient. All may be weighed in determining . . . whether the defendant's participation . . . was sufficiently significant to be considered 'major.'" (*Ibid.*)

Whether a defendant acted with reckless indifference to human life depends on whether the defendant was "'aware of and willingly involved in the violent manner in which the particular offense is committed,' and . . . consciously disregard[ed] 'the significant risk of death'" created by his actions. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.) ""'[T]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."'" (*Ibid.*) The factors for determining whether a defendant acted with reckless indifference to human life overlap with the major participant factors and include: (1) defendant's knowledge that weapons would be used; (2) how the weapons were used and the number of weapons; (3) defendant's proximity to the crime; (4) defendant's opportunity to stop the killing or aid the victim; (5) duration of the crime; (6) defendant's knowledge of the killer's propensity to kill; and (7) defendant's efforts to minimize the possibility of violence during the crime. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1023–1024.)

Here, substantial evidence and the totality of the circumstances supported the court's findings that defendant was a major participant in the robbery and acted with reckless indifference to human life. Defendant knowingly joined an armed plan to "hit a lick," went with Smith to the victim's apartment, and understood both he and Smith were armed. Once

10

there, defendant personally chased the fleeing victim while shooting at him. He also picked up the drugs the victim dropped during the chase. Defendant further allowed Smith to continue shooting at the victim and made no effort to intervene. Defendant then calmly left the scene with Smith, keeping a firearm and some of the stolen drugs as his share of the proceeds. His post-crime statements bragging that he "emptied" his firearm and shot "about nine in him," along with his efforts to dispose of the murder weapon, further demonstrate awareness and indifference to lethal risk.

Defendant claims the evidence showed the .22-caliber firearm that fired the fatal shots belonged to Smith, who gave the firearm to defendant to dispose of after the crime. He likewise insists the evidence suggests he had a .38-caliber firearm "loaded with non-lethal buckshot." Regardless, there was evidence defendant personally shot at the fleeing victim and knowingly participated in the robbery while Smith also fired. The court was entitled to credit Avery's account of defendant boasting that he had "emptied" his weapon and to reject the view that defendant acted under a mistaken belief his shots carried no risk of death. Indeed, in his police interview, defendant acknowledged firing a .38-caliber firearm at the victim and appeared to be surprised that his shots had no effect. Defendant speculated he must have missed the victim or the victim "was juiced or something" because the victim kept running after defendant shot at him.

Defendant next asserts the court did not properly consider his youth or Dr. Cauffman's testimony on adolescent brain development. According to defendant, he was 20 years old and "had the brain of an adolescent at the time of the robbery" so he did not act with reckless indifference to human life. The court did not overlook defendant's age. To the contrary, it expressly considered Dr. Cauffman's testimony, found the

11

testimony credible, and reasonably determined her general observations about adolescent brain development did not overcome the specific evidence of defendant's knowing, active participation in an armed robbery. Unlike the cases on which defendant relies, the trial court treated youth as a relevant factor and weighed it alongside the trial evidence.

## DISPOSITION

The postjudgment order is affirmed.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.